IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SARIETA C. BRUMMETT, | ) | CASE NO. 1:10 CV 96 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Sarieta C. Brummett, for disability insurance benefits and supplemental security income.   The parties have consented to magistrate judge's jurisdiction.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Brummett had severe impairments consisting of degenerative disc disease and obesity.[1]   The ALJ decided that Brummett can do a full range of light work.[2]

---

[1] Transcript ("Tr.") at 9.

[2] *Id.* at 10.

Based on that residual functional capacity, the ALJ determined that Brummett could not perform any past relevant work.[3]  Applying the medical-vocational grids in Appendix 2 of the regulations, the ALJ found Brummett not under a disability.[4]

Brummett asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record.  Specifically, Brummett argues that the residual functional capacity finding is not supported by substantial evidence because it does not include greater limitations on the use of her right arm and hand. Brummett also takes issue with the ALJ's finding that she was not fully credible.  Finally, Brummett challenges the ALJ's finding at Step 5 of the sequential evaluation process based on the medical-vocational grids in Appendix 2 of the regulations.

The Court concludes that the ALJ's finding as to limitations on the use of the right arm and hand does not have the support of substantial evidence and, therefore, must be reconsidered.  Depending upon the outcome of that reconsideration, the ALJ may be required to obtain the testimony of a vocational expert to make a finding at Step 5 of the sequential evaluation process.

---

[3] *Id.* at 13.

[4] *Id.*

## Analysis

**1.     Limitations on the use of the right arm and hand**

In this case, the ALJ found that Brummett was capable of the full range of light work without any additional limitations[5] and ruled that she was not disabled at Step 5 of the sequential evaluation process using the medical-vocational grids in Appendix 2 to the regulations.[6]

At issue here is whether the ALJ should have found additional limitations on the use of Brummett's right hand and arm.  This limitation is particularly crucial because a vocational expert testified at the hearing before the ALJ and offered the opinion that without full use of both hands, no jobs existed at the light or sedentary level that Brummett could perform.[7]  During the argument in this case, Brummett's counsel acknowledged that this limitation provides the foundation for Brummett's challenge to the ALJ's decision.

The medical evidence in the record establishes that Brummett has some degree of limitation in the use of her right arm and hand.  She underwent an orthopaedic examination in August of 2003 by Kalyani Ganesh, M.D.  During that examination, she complained of numbness in her hands and arms.[8]  Dr. Ganesh found her hand and finger dexterity intact,

---

[5] *Id.* at 10.

[6] *Id.* at 13.

[7] *Id.* at 37-38.

[8] *Id.* at 247.

with maximum grip strength bilaterally.[9]  He concluded that she had no limitation on the use of her upper extremities.[10]

In March of 2005, Gregory Brant, D.O., Brummett's primary care physician, did a residual functional capacity evaluation.  He rated her moderately limited in reaching but not significantly limited in handling.[11]  As the brief of the Commissioner effectively argues,[12] Dr. Brant at the time does not appear to have been treating Brummett for her orthopaedic problems; rather, his primary contact with her was for the prescribing of birth control medication.  Dr. Brant stated that Brummett's physical limitations were expected to last between 9 and 11 months.[13]  Although the ALJ gave Dr. Brant's opinion little or no weight,[14] he nevertheless cited the 9 to 11 month prediction no less than four times in his decision.[15]

Walter Holbrook, M.D., a state agency reviewing physician, completed a physical residual functional capacity assessment in December of 2005.  He noted abnormal hand function (grasp, manipulation, pinch, fine coordination) in the right upper extremity because

---

[9] *Id.* at 248.

[10] *Id.* at 249.

[11] *Id.* at 209.

[12] ECF # 16 at 4-5.

[13] Tr. at 249.

[14] *Id.* at 12.

[15] *Id.* at 11, 12, 13.

of numbness.[16]  He rated Brummett limited in handling (gross manipulation), fingering (fine manipulation), and feeling (skin receptors).  His comment:  "[l]imited to never in the RUE secondary to numbness."[17]  He also rated Brummett never with respect to climbing ladders, ropes, and scaffolds and limited with respect to balancing, stooping, and crouching.[18]

Dr. Holbrook relied heavily upon the consultative examination done in July of 2005 by A.K. Bhaiji, M.D.  Dr. Bhaiji noted abnormal grasp, manipulation, pinch, and fine coordination in the right hand.[19]  His testing by dynamometer showed no strength in the right hand, and he rated Brummett abnormal with respect to grasp, manipulation, pinch, and fine coordination in that hand.[20]  He considered this testing reliable.[21]

On the orders of Dr. Brant, Brummett underwent a cervical MRI in June of 2007.  The impressions of that procedure disclosed a Chiari I malformation and mild degenerative changes in the lower cervical spine.[22]  It is apparent from these MRI findings and the test results obtained by Dr. Bhaiji that the 9 to 11 month "prediction" earlier made by Dr. Brant

---

[16] *Id.* at 192.

[17] *Id.* at 194.

[18] *Id.* at 193.

[19] *Id.* at 182.

[20] *Id.* at 184.

[21] *Id.*

[22] *Id.* at 256.

should receive no weight given that, at the time, Dr. Brant had the benefit of no medical test results.

The transcript of the hearing before the ALJ states that a consultative examination was to be done after the hearing.[23]  This hearing took place on February 22, 2008.[24]  This consultative examination was performed by Dariush Saghafi, M.D., a neurologist, on May 15, 2008.  Dr. Saghafi rated Brummett's ability to reach, handle, finger, and feel with the right hand as capable of continuous activity (over two-thirds of the time).[25]  Despite this notation, the manual muscle testing he performed showed diminished strength in the right hand according to dynamometer readings.[26]  Accordingly, he rated Brummett abnormal in grasping and pinching.[27]  He considered this testing reliable.[28]

Nevertheless, in his narrative report, he stated that Brummett was capable of seated or light duty work that would not involve continuous use of the right arm or leg, a statement

---

[23] *Id.* at 38.

[24] *Id.* at 17.

[25] *Id.* at 259.

[26] *Id.* at 264.

[27] *Id.*

[28] *Id.*

contrary to the continuous activity ratings previously noted.[29]  His impressions also state that Brummett's problems on the right side are related to the Chiari malformation and C5-6 possible nerve root compression noted on the MRI.[30]  Dr. Saghafi imposed limitations on Brummett's ability to climb stairs and ramps, climb ladders and scaffolds, balance, stoop, kneel, crouch, and crawl.[31]  Further, he noted environmental limitations with respect to unprotected heights, moving mechanical parts, operating a motor vehicle, and vibrations.[32]

Here, given the objective medical evidence and opinions of the consulting and reviewing physicians that Brummett had limitations on the use of her right arm and hand, some degree of such limitations should have been added to the residual functional capacity finding.  The ALJ's reliance upon that unsupported "prediction" to evaluate Brummett's

---

[29] *Id.* at 269.  The ALJ chose to credit Dr. Saghafi's "continuous use" rating at page 3 of the report (Tr. at 259) over the results of dynamometer testing (Tr. at 264) and his narrative that Brummett's right side weakness was caused by the conditions in the cervical spine revealed by the MRI and would preclude continuous use of the right arm (Tr. at 269). As counsel for the Commissioner stated during the oral argument, the ALJ has discretion to resolve conflicts in the opinions of medical sources.  Such resolutions, however, must have the support of substantial evidence.  Here, the only specific reason for resolving that conflict in favor of no limitation given by the ALJ was Dr. Brant's "prediction" that any limitation would not last 12 months.  (Tr. at 13.)  As previously explained, this "prediction" has no basis in the objective medical evidence.

[30] *Id.*

[31] *Id.* at 260.

[32] *Id.* at 261.

credibility,[33] to dismiss the weight given to the opinions of Drs. Holbrook and Bhaiji,[34] and to determine the ultimate residual functional capacity[35] is misplaced.

## 2.      Reliance on the medical-vocational grids to make the Step 5 finding

With such limitations, the disability decision at Step 5 of the sequential evaluation process could not be made based upon the medical-vocational grids.  The Commissioner makes the argument that, even with those limitations, the occupational base would not be so eroded as to make the use of the grids improper.  The Commissioner's counsel makes the same argument when confronted with the manipulative, postural, and environmental limitations noted by Drs. Holbrook and Saghafi.  This argument has no merit on the record here as interpreted under longstanding Sixth Circuit precedent.

The ALJ based his decision at Step 5 solely on the medical-vocational grids.[36]  A vocational expert testified at the hearing.[37]  The ALJ posed a hypothetical to the vocational expert that included the limitations "does not require repetitive grasping with either hand or fine dexterity with the dominant hand."[38]  She responded that with such limitation no jobs

---

[33] *Id.* at 10-11.

[34] *Id.* at 12.

[35] *Id.*

[36] *Id.* at 13-14.

[37] *Id.* at 35-38.

[38] *Id.* at 37.

would exist at the light or sedentary level.[39]  The ALJ disregarded the ALJ's testimony because Dr. Brant's "prediction" about the duration of manipulative limitations supported not including any in the residual functional capacity finding.[40]

The ALJ included no manipulative limitations in the residual functional capacity,[41] which as stated above constitutes error.  With such limitations included, the Step 5 finding cannot be made based on the grids alone.  As the Sixth Circuit held in *Hunt v. Secretary of Health and Human Services*,[42] "the loss of manipulative capacity is a nonexertional limitation."[43]  Such a limitation precludes exclusive reliance on the grids.[44]

This case must be remanded for reconsideration of the residual functional capacity finding as explained above.  If on remand that finding includes additional manipulative, postural, or environmental limitations, then the ALJ should make the Step 5 finding with the assistance of testimony from a vocational expert.

---

[39] *Id.* at 37.

[40] *Id.* at 12.

[41] *Id.* at 10.

[42] *Hunt v. Sec'y of Health & Human Servs.*, 816 F.2d 1141 (6th Cir. 1987).

[43] *Id.* at 1143.

[44] *Id.*  Further, the ALJ did not incorporate the postural or environmental limitations imposed by Dr. Holbrook (Tr. at 193) or Dr. Bhaiji (Tr. at 260-61).  These limitations, which are not seriously disputed, further rule out exclusive reliance on the grids.  *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990).

**Conclusion**

Based on the foregoing, the decision of the Commissioner denying Brummett's applications for disability insurance benefits and supplemental security income is reversed and the case remanded for reconsideration of the residual functional capacity finding and the finding at Step 5 of the sequential evaluation process.

IT IS SO ORDERED.

Dated:  January 27, 2011                                 s/ William H. Baughman, Jr.
                                                        United States Magistrate Judge